Good morning, Honorable Justices. Let me introduce myself. My name is Thomas E. Frankvich. I represent the appellant in this case and two other cases before you. By way of introduction, our practice is primarily representing persons with disabilities. Between 1994 and the present time, we probably filed between 1,000 and 1,200 Title III cases. Mr. Jahnkey and others that we represent, we consider those individuals that are activists, that are championing the rights of others that may be afraid to come out and champion their own rights. Others consider these individuals professional plaintiffs. I consider myself a champion of the rights of the disabled. Others consider me an extortionist. That word extortionist will come up later on in some of the cases that have been cited. In this particular case, Poop Deck, there will be some reference to the following case of Foster Freeze. In the Poop Deck case, three issues were, was there an enforceable settlement agreement? I'm not going to spend a lot of time on it. There was. The next issue, the pre-litigation warning letter that was in Dorn v. Del Taco, the Ninth Circuit already ruled on that. There is no need for a pre-litigation warning letter. And then we get to the third issue, which will also go to Foster Freeze, special circumstances to make the fee award unjust. I think in this particular case, the court relied on a pre-litigation warning letter to deny the application for fees, but also by virtue of the fact that they had an order to show cause, which followed the infamous case of Molsky v. Mandarin Touch, which has also been followed by other courts and has been now followed by some state courts in Mandarin. I'm sorry, who had an order to show cause? The judge in this case had an order to show cause why the case shouldn't be dismissed for lack of standing. And in the end, dismissed the... But he didn't dismiss it for lack of standing. No, but dismissed the supplemental jurisdiction claims, which would be at the end of the Civil Rights Act, just leaving the Americans with Disabilities Act. Right. But you didn't, you're not appealing that issue. You didn't appeal that issue. No, we did not appeal, we did not appeal that issue. And you could have, I guess, taken those claims up in state court. That's correct. Let's talk, there are two, my understanding is that what the judge relied upon in denying the fees entirely were essentially two things pertinent to the case and perhaps an atmospheric event relative to other cases. And the pre-filing order and so on. But leaving that aside as it seems to be inappropriate, what about the other two? One of them was the lack of prior notice. And we have the Scaff case recently, which seems to indicate that that's not a proper consideration. Well, we also have Doran v. Del Taco, which says that notice is not required. Right. Is the fact that it's not required, does that make it completely irrelevant in this sense? As I understood it, the court's primary reasoning was that the case was unnecessarily prolonged and that there was a general lack of cooperation on the part of your firm. And that that was, and that the fact that there wasn't pre-litigation notice was perhaps emblematic of a much larger pattern. Is it improper for a court to even think about that factor as it plays into other factors? Or, because to consider it doesn't mean that it's required. There are plenty of non-required methods of cooperation that a court can take into account. Well, I don't think that, I think the court has to look at it from the standpoint of the Americans with Disabilities Act, which was passed as we stand here now almost 18 years ago, wherein with the passage of the act, there was 18 months of voluntary compliance before there could be any litigation. The Department of Justice made it very clear that a public accommodation, the landlord and the tenant, had an affirmative duty to identify and remove architectural barriers where it's readily achievable to do so. So here, some 18 years later, we're having defendants say that they should have some type of an excuse because a plaintiff is not giving them notice. Apparently, nobody paid any attention to the notices that were done by Attorney General Janet Reno while she was in office for about a year and a half, where it was on the radio that there was a duty to identify and remove barriers. And I'll never forget the ending, it's the law. So I don't think that it's proper for the court to go back and say, well, what were the other avenues that could have been addressed? Well, here the issue, the main issue I think that the court was concerned about was that there was an attempt to settle and deal with the problem almost immediately, as soon as the suit was filed. And yet, in the court's view, there was a lack of cooperation for a considerable period of time. And I think it was in that context that the court used this as one extra thought. Well, that might have been an extra thought. But see, what we have here is we have two properties that are adjacent to one another. We have the Mermaid and we have the Poop Deck. And the Mermaid we were negotiating with, as it indicates in the papers, that agreement was signed several weeks or months before the Poop Deck agreement, because Thielen owned both properties. And neither one of the properties had accessible restrooms. Jenkins goes to the Mermaid. And the settlement, as I understood it, was to have one facility that was accessible from both of the restaurants, bars, whatever. Right, the intersects. And in fact, as I understand it, the first settlement proposal was about seven or eight months after the case was filed. It wasn't so immediate. Is that right? Well, actually, it was in the beginning. I thought it was in June of 2005 when the case was filed. In the beginning, when we served the summons to complaint, we served a demand letter that indicated what needed to be done in terms of a unisex bathroom, parking, and so on. Right. And there was no response for about seven or eight months. Is that right? I believe that to be correct. All right. But we had the Mermaid and the Poop Deck. And then where we got bogged down is when we were dealing with the Mermaid. It would be more helpful to answer our questions. And I think we know that. We understand that there were two related things and that you were negotiating about the other one. That's in your place. All right. So there was this time period. And then in terms of the fees, they then wrote a letter in June, and you didn't answer the letter for a while. A couple months at least, or maybe more than that, maybe two or three months. Correct. Were you incurring fees during that period? Well, not really. Because if you look at the motion for the attorney's fees, you'll see that any kind of delay that we have, it wasn't that we were doing other things like, you know, propounding, discovering, taking depositions, or doing anything of that nature. You weren't running up fees during that period. No. You think it would be appropriate to at least subtract the fees that you did run up during the period that you weren't answering your letters? Well, I think the court in its discretion could look at that and make a determination whether those what may have been incurred should be reduced or not. What about their fees during that period? I mean, suppose they were spending a lot of time during that period because you weren't answering them, and then it ends up being resolved and that's on the ground. Well, you know, I can't expect that they'd be spending a lot of time because they already had plans to do the unisex restroom. And where I got hung up, again going back to mermaid poop, is that I was under the mistaken impression that's in the record that there was going to be a common, because there's a common wall, that that was going to be opened up so that you could go from the mermaid into the poop deck. As it resolved, it resolved with a unisex restroom that, you know, was signage that you could go from. Are you representing, because I don't think there's anything in the record to show this, that in the discussions about in the other case you were really discussing this case so they really were getting an answer in responses that just wasn't on the paper in this case? Is that what you're saying? Well, what I'm saying is that we were working both cases, and we were concentrating initially on the mermaid. But that they know that is what I'm asking. I'm sure they knew that. Absolutely they knew that. So it's your real suggestion that the apparent non-answers to their letters was really not a non-answer because there were conversations going on with the same people, and they knew that you were actually being responsive. Is that what you're saying? Well, I would say, in essence, that we were getting down to trying to ensure that there was going to be access in those two public accommodations. But let's just say at the very end when they're saying we're having our mediation in two days, we want to hear your response before the mediation so that we won't waste our money on this mediation. Now, at that point, it seems fairly clear that they didn't get that answer and had to cancel the mediation. So I'm not seeing where your discussions in the mermaid helped with that situation. Well, we basically had the mermaid in place, and the other was going to fall right in with it because we already had the agreement in mermaid. So it was a question of wrapping the poop deck up in the mermaid, if that makes any sense, because we already had the mermaid agreement with the owner of the poop deck. Yes, but, I mean, it is a silly way to litigate, and at least an unattractive one from a court's point of view because people are asking you questions, and all you have to do is answer them, and you don't. Now, whether that's a reason not to deny fees, if, in fact, it isn't affecting the fees, it doesn't seem to me that it is and may be a reason to deduct some fees and maybe even deduct their fees if they spent any reasonable fees during the period that you're not answering them. But it would be a good idea in the future if you just answer your letters. It would help a lot in terms of relationships with the courts and the litigants. I see red lights, though. Which of the two cases did you file first, this one or the mermaid case? I'd have to look at the record. I think they were probably filed at the same time. I'm just wondering whether there was – The reason we didn't file – Join them together. Because you have the readily achievable defense, and we don't know. We have the owner, the landlord, same landlord. We have different operators. And so if you get to the readily achievable defense, you don't know whether in terms of the operators, which one might be in the better financial position. So were the literal defendants – were the actual defendants in the two cases different? The operators are different. Were the lawyers different? The landlords – Were the lawyers different? There was two different – I believe there was two different sets of lawyers. I mean, the same one representing the landlord. So he was in both cases? Pardon me? The landlord was in both cases? Correct. I see. Okay. I think you're over your time. Thank you. Thank you. Thank you very much. We'll defer to Mr. Morrone. I think you can stay here, sir. You can stay at the table. Counsel, you may begin whenever you're ready. May it please the Court. Thank you, Your Honor. My name is Tom Morrone. I represent the Poop Deck, Inc. and Mr. Thalen. Obviously, after SCAF, we do not claim and did not claim below that the lack of pre-litigation notice made a claimant ineligible for a payment. But you are claiming that. I mean, to me, I just can't understand what the distinction is between it's not a relevant factor and it is a relevant factor. I mean, if it isn't a requirement, then it's not a requirement. And it's not a requirement for good reason. So if you start relying on it and denying fees, it seems to me you're functionally making it a requirement. Well, I would disagree. I think there is a difference between saying it can be a factor among other factors that you can put into the approach. Well, why should it be a factor? I mean, if it is not something that the lawyer is required to do, then the lawyer, it doesn't demonstrate that he's doing something legally wrong, and it doesn't, then why should it be relevant to anything? Well, I think it can be. And let me try this, something I thought this morning. It seems to me that if you bring an ADA or a discrimination case and you win, but you don't really win anything substantive, you win a dollar on a $17 million claim or you win a judgment that the ---- But in those cases, the cases I am just referring to, the courts have said that even though there is no requirement in the statute that you win something substantive, that the court can consider a technical or de minimis victory as a factor. And that's what we're saying here. The lack of pre-litigation notice is not required by the statute. But there's nothing in the statute that says it is, can't be considered as a factor under Hensley and under Barrios that says, look at all the cases ---- But this is a procedural requirement. And the two are not analogous. In the other instance, the point is that you bring a lawsuit to win something, and if you don't win very much, that could be considered. Here they did everything procedurally. Let's leave aside the issues of their nonresponsiveness. But in terms of the pre-filing question, they did everything procedurally. They filed a case that was perfectly proper. And there are some good reasons for it. The decision not to require pre-filing notice was a congressional decision. There have been attempts to go to Congress to change that. They haven't been changed. There are some good reasons not to do that, as well as good reasons to do it. But it hasn't been done. They have filed a perfectly proper lawsuit. Why should they be punished for it? Well, it's not a matter of being punished. It's a matter of being ---- Well, if you can't get your fees for a time that you've expended, you're not going to get many lawyers to bring these cases, right? Well, after SCAF, I would agree, it can't be a singular factor. I would agree after SCAF it can't be a singular factor. I think it can be a factor, along with other factors in the case, under Barrios, under Hensley, where the court has said, if you look at the entire case, so long as you do the proper approach, an award of no fee or little fee is perfectly appropriate. I mean, that's the decision in Norris. And Judge Lew here was absolutely right on, spot on about the law, when he said that he can decline to award attorneys' fees when to do so would be unjust. That's Hensley. That's Barrios. But unjust suggests there is something wrong with not providing a price-vailing notice, and the decision in SCAF is that there isn't. So why is it unjust? It's a combination of factors is what we're relying on. It is ---- it's a combination. It's the lack of pre-litigation notice. That's true, but you have this factor in there. So why should it be in there at all? How does it contribute to make it unjust? I guess that's a specific question. In what way does it contribute to making it unjust that they have not done something they don't need to do? Because it makes the litigation itself unnecessary. And, again, the Ninth Circuit has said when you look at the Hensley factors, we can look at two things specifically. Does it advance the congressional purpose of the Act and then look at the balance of equities? Does it advance the congressional purpose of the Act to file a lawsuit when, if you had given pre-litigation notice, you would have accomplished the same thing? Ninth Circuit said that is a proper inquiry. Even on that ground in this case, this case was filed in November. You didn't come up with an offer until June, right? So what reason is there to think that if they had sent you a letter in October, you would have fixed it by November? Not basically. Well, it was filed in November, served in January. All right. Still six months before you came up with an offer. There was an insurance issue involved, so there was an insurance counsel for a while. Okay. They were replaced at the time the OSC was heard. Okay. That was in May. Okay. I came on board in June. But that's not the point. The point is whether it was really unnecessary to file the lawsuit. Apparently not, because it took six months to get any response even to the lawsuit. Well, what the Court is saying, what many courts have said, district courts before SCAF, I don't know what they'll do subsequent. Many district courts have said we don't know that unless you make the effort to at least send the letter beforehand. And, of course, there's Molsky, which has imposed a pre-filing requirement on this law firm. This law firm being an appellant's law firm. It's pending on bank right now in this Court. I mean, on a petition for a hearing on bank. Also, the Duran case, which you relied on quite heavily, has been reversed. Yes. As in SCAF. Apparently rejecting the theory that you're now propounding. Is that right? No. I believe both SCAF and Duran say that the lack of pre-litigation notice does not make you ineligible to request the fees. I believe that. And that's fine. But in this case, we're not saying it makes him ineligible. He had the right to request fees. And he did. And the Court said there are a couple of factors that allow me to say I'm not going to award the fees in this case. Would you say that this theory that you're propounding would apply to any case outside the ADA, that every lawyer has to file a demand letter before filing the lawsuit in order to get statutorily available fees? Well, I don't know that. But California is certainly going toward that with the Supreme Court case. Actually, no. Actually, that Supreme Court case only applies in a catalyst situation. If you're trying to get catalyst fees, it doesn't say if you're trying to get fees for an actual adjudicated case, which is what we have here. I don't know the answer to that. I haven't thought about it hard enough outside of the ADA. Well, what theory would there be by treating the ADA differently? Well, the ADA does have a history of being used in the way that it has been used, which is, Mr. Franklin, which would define it as public interest plaintiffs trying to move these businesses who are not in compliance toward compliance. And that's a favorable way to look at it. But if that's true, if it really is public interest, if that's the motivation here, in an ADA context, in many situations, a letter would accomplish the same thing. Well, except that the statute has fees in it precisely to encourage lawyers to bring the case. They're not envisioning that lawyers are going to do it for free. The plaintiffs might, but the lawyers are not supposed to. It's public interest in the sense that it advances the public interest, but we're asking people to do it pro bono. And if you don't, if you require pre-filing notice and encourage, then the lawyers are never going to get paid. In fact, there's under Buchanan, and they have a very good reason for not wanting to do that, which is they're going to have to do a whole bunch of work, and if it sells beforehand, they're never going to get paid, so no one's ever going to do it. So the net result of this requirement is going to be that there isn't going to be enforcement. I disagree. The organizational plaintiffs, in this case, there was an organizational plaintiff before the OSC to reason. I don't know what it would be. But they don't have free lawyers. They don't need a free lawyer to send out a letter that says we had someone go to your restaurant. They've indicated thus there's a problem. You need to come into compliance, talk to a lawyer or something. So in other words, individuals have to, can't do it, can't go out and hire lawyers and ask lawyers to do it. They have to work through organizations. Well, they can. And all we're saying is that Congress has said the district court has discretion to award fees or not, and what I am suggesting is that one factor, not a factor I need to rely on to win this case, but one factor can be the lack of pre-litigation notice. Let me ask you, is there any way to tell, let's, I'm going to assume for the purpose of this question, that the absence of pre-litigation notice is not even available to the district court as a factor. So let's assume that for the purpose of this question. Can we tell from this record whether the district court would have denied fees in any event and on what grounds? Well, of course, we can't know for sure what Judge Lew would have done. But the court did state additional grounds to the lack of pre-litigation notice. It seems by his statement that he was focusing on the protraction of the litigation, particularly in context of the firm's history in the district. When we're reviewing a district court decision for abuse of discretion, it's incorrect view of the law or clearly erroneous finding of fact. I don't think there's any incorrect view of the law. He doesn't say that pre-litigation notice is required. He says. Well, this question that I asked you is apart from that. Well, incorrect view of the law, whether it's unjust. He says one of the reasons it's unjust is the unreasonable protracting of the litigation, which is really extensive here because it's from June all the way through the end of December. And the fact is it's not whether the mermaid was going to do a unisex bathroom or not. That wasn't the complicating issue. It was whether that restroom was going to suffice for my client or did I have to put in a new unisex restroom in the poop deck. That was extraordinarily expensive on our side in order to determine. We had to have architects and contractors come in during the interim where we were not getting a response and during the interim where they were saying, yes, it's okay, no, it isn't okay, give me money, it'll be okay if you give me money. That causes us all sorts of uncertainty and problems. I mean, that's the protraction of the litigation that Judge Lewis is pointing to. And I believe under an abuse of discretion standard, we should allow the district courts to look at all the facts in the case under NORS and to make these kind of determinations. Was your – the landlord was, in fact, involved in both cases. Is that true? Yes. And he had the same lawyer involved in both cases? No, because insurance stepped in and picked up the defense of the other case. I see. So there isn't any way that we could assume that once I knew – that the defendants in the two cases knew what was going on in each case. Well, I – you know, we knew what was going on. I mean, we certainly knew what they were doing in the other case. But the complicating thing for us was not those issues. They agreed to do a unisex bathroom in the Mermaid from the get-go as we did. I mean, I could only write the letter knowing that the Mermaid was going to build the unisex bathroom. The complicating issue was, was that bathroom going to be sufficient for my claim? Right. Because it wasn't in my facility. They were separate corporations, correct? Well, the Mermaid, Mr. Thelen, didn't run his restaurant under a corporate form. Okay. Okay. But the Poop Deck Inc. is his tenant in a separate building, a separate facility. Okay. All right. Okay. So was there – what does the records show about – I guess it would be helpful to me if you would try to articulate why the, you know, rather annoying non-answering is a basis for denying the fees altogether, as opposed to – and this seems perfectly fair – to have deducted any fees that were run up during that time period by the plaintiffs and perhaps by you as well, because you shouldn't be having – if you were spending time doing things you didn't need to do. But as – why – since that's one option, why would the option of denying fees altogether be one within the judge's discretion? Because litigating in that fashion, unreasonably protracting a litigation, causing uncertainty to defendants, undermines the purpose of the congressional award of the discretion. It undermines the purpose of the ADA, which is to get compliance in a way that's not overly punitive to the businesses, which is why there's this readily achievable factor, but also allows access to the people who rightly can insist on access. It undermines congressional purpose. And it really runs up the fees on the defendant's end, because you have to prepare for summary judgment. You have to prepare for mediation. You have to bring in the experts to decide if I can – Is that in the record if that happened to you? Yes. And we had to bring in experts to decide if I can drill a hole through the two buildings. You have to talk to – But what I'm asking is, is it in the record that you, in fact, incurred those costs? Yes. Yes, we didn't submit a fee request, but it's in my declaration as to all the things we had to do during that seven-month period. And ultimately, it only settled when I said, I've got to bring a motion for summary judgment in two days, which, you know, at that point, my fees were to the point of bringing a motion for summary judgment. Thank you, counsel. Thank you. Mr. Frankovich, you have used your time, but I'll give you a minute for rebuttal in this case. And I'd actually like to ask you a question. The statute clearly gives the district court the discretion to decline to award fees in these cases, as well as to award them. In your view, what are permissible factors for a district court to consider in deciding not to award any fees in a particular case? Well, the factors would be what the relief was, whether, in fact, there was protracted litigation that was unnecessary. We have a time delay, not protracted litigation. The threats of the defendants to, you know, to bring a motion for summary judgment, which I'd like to address in one minute as it relates directly to the canon. You used the word threat. It's a recognized part of litigation to file motions for summary judgment, yes? But I'd rather continue with your list, though. What's happened in this litigation, ADA Title III litigation, are defendants who, under the canon, will come in and do the work most of the time after litigation has been underway for a while, and then come in and make a motion to dismiss for lack of mootness and ask the central district to dismiss the supplemental jurisdiction claims, which doesn't happen very often in the northern district. And that will come as empirical evidence that the Buchanan court was seeking. But why I think Buchanan is important here is Buchanan states, Petitioners finally assert that the catalyst theory is necessary to prevent defendants from unilaterally mooting an action before judgment in an effort to avoid an award for attorney's fees. They also claim that the rejection of the catalyst theory will deter plaintiffs with meritorious but expensive cases from bringing suit. We are skeptical of these assertions, which are entirely speculative and unsupported by any empirical evidence. And I would say to this court, we've got two systems of justices. We have a system in the central district, and we have a system in the northern district. And if it's within the purview of the Ninth Circuit, they should look at the number of 88 cases filed between January of 2002 in the present time in the central district and in the northern district. Then they need to look at the number of cases dismissed for mootness or standing in the central district versus the northern district. And very importantly, if we're looking at the ability to utilize the national mandate to remove barriers, the number of cases, 88 Title III cases during this period settled in the central district versus the northern district. Counsel, before you use that, you've already exceeded your time, but I wanted to be sure I had your whole list of the factors that you think are permissible for a district court to consider in deciding not to award fees. And you mentioned the extent of success and protracted litigation. Are there any other factors that, in your view, are permissible for the court to consider in deciding not to award fees? To not award fees. Correct. Not reduce, but not award. Correct. Do you agree that the statute does give that as one option? I would say, you know, if it's bad faith tactics. I don't disagree with that. Any other factors that you think are permissible? What if a failure to give pre-litigation notice seemed to be quite clearly something that would have resulted in remediation? For example, here, there was a relatively prompt cooperation and settlement. Could you not say that had pre-litigation notice been given in this case, an inference could be drawn that the case would have resolved without litigation? Whereas, perhaps in some other case where they fight to the death, then you could reasonably say pre-litigation notice clearly wouldn't have helped because they fought to the death anyway. If the court were to look at the report of the San Francisco Independent Living Center and say, you know, and the Business Association, which was authored about maybe seven years ago, the conclusion that they drew, they had grants that were available to the businesses to make them accessible, and they sent out notices to all the businesses, you can find this report on the Internet. The conclusion that they drew in a seven-page report is the hammer of litigation is the only thing that's going to make public accommodations provide access. And this is reflected in the Duran v. Delcatecco case and I think in one of the cases here, that the argument seems to be that it's not just that the person can say when you're there, you know, this isn't accessible, please fix it. They seem to, when they were requiring notice, they seem to be requiring essentially a lawyer's letter because if you don't threaten to sue, then you're not really serious. So meaning you have to have a lawyer involved who is going to get involved with the likelihood that he isn't going to get paid, which supports essentially what you're saying. That is, that if you're not, if you can't get paid for your pre-litigation work, then requiring you to do it is essentially requiring you to do it for free. This record is, you know, this isn't before the court, but since January of 2005. If it's not before the court, if it's not in the record, we can't consider it. Well, I'm just talking about, I was getting some advice by the court and I was just going to point out to the court since 2005, we've had all our clients send out letters to the landlords and tenants and it's made no significant difference whatsoever on them taking remedial measures. Well, what about the protracted litigation thing? I mean, you, what you're essentially saying is if it was protracted and caused them to run up costs. He claims he did run up costs during this period. But he can do, they can put that in their motion. During that period of time, nothing was being done. Well, but he was doing something because you weren't answering. He says he was doing something, he was preparing a summary judgment motion because you weren't responding. Well, he's preparing a summary judgment motion. Why would he be preparing a summary judgment motion when we already have a settlement agreement with the mermaid and just had to take care of incorporating the poop decoration? Because this is a different entity and it was, I mean, as I understand the correspondence in the file, it was not at all clear until the very end that it was going to suffice for your clients to have one accessible restroom that would serve both of these entities. Well, that's correct. But we're dealing with Thelen and the mermaid to get it taken care of. And we're getting the bathroom and everything else being worked out. It's all they have to do in poop deck is watch what's going on in the mermaid. If, you know, what we have in our motion for attorney's fees, you can timeline that and look and see exactly what was done during that period of time and see whether there's anything that would protract it. The argument really here is the protracted litigation is that four-month window when we weren't necessarily responsive to the poop deck. But that doesn't necessarily drive the cost up. We understand your argument. And both counsel exceeded their time. We'll submit the case just argued. And thank you both for your arguments. And, Mr. Franklich, you can stay put because we're going to move to Janky versus the Most Believed Jokes.
judges: Graber, Berzon, Wilken